The next case is No. 24-2336 Lincoln Corp. v. Microsoft. Mr. Franko, when you're ready. Good morning, Your Honors. May it please the Court. This case should be vacated and remanded under 02-MICRO because the Board failed to construe a critical claim term, distributed mobile architecture. In addition, the case should be reversed because of the error in the construction of communications information, which should be construed to require that the communications information identify the network that the target device is presently connected to. So I'll start with the distributed mobile architecture issue. Under 02-MICRO, the Court has held that if there is a dispute over the meaning of a term, it is not sufficient to say that the term should be given its plain and ordinary meaning, and that's exactly what the Board did here. Has that opinion ever been applied to an IPR? It has. In the Homeland Housewares v. Whirlpool Corporation case, which is 865-F3-1372, this Court said that that applies equally to PTAB in deciding IPR decisions. It's necessary for this critical term to have been construed for this Court to review the PTAB's finding, and it should be given de novo review. Now, here, what the Board did was disagree with the construction proposed by WAMCO, and that's in Appendix 10. Is this really a claim construction issue, or is this a – Microsoft says we should just look at this as whether or not there's substantial evidence to support the conclusion that it's anticipated. Why are they wrong about that? Well, the – it is a claim – Why is it a de novo review here? Okay, so the term distributed mobile architecture was not construed. The Board just said we're giving it plain and ordinary meaning, and it did not say what the plain and ordinary meaning was. WAMCO's proposed construction was that the network has to be one where routing functionality is distributed. Under that construction, there was no finding of anticipation, nor could there be. So applying de novo review – I mean, first you need to have a claim construction to review. Well, you proposed a very detailed claim construction, right? That's correct, Your Honor. And they rejected it. That is correct. And they said plain and ordinary meaning. That is also correct. That's claim construction. It is the beginning of a claim construction. Under O2 micro, this Court has held that when there is a dispositive dispute or even any dispute over what the term means – I understand what O2 micro says, but it sounds to me like you're suggesting O2 micro doesn't allow plain and ordinary meaning at all, which we haven't said. So here, the Board was on notice there was a claim construction dispute. You had two different views of what it was.  And it resolved it. It did not resolve it. It did. It said plain and ordinary meaning. Distributed mobile architecture has a plain and ordinary meaning. And then it applied it to this case, and it found substantial evidence that this was anticipated. So it's a substantial evidence, whether the disclosure has a distributed mobile architecture. Respectfully, under O2 – We're not going to give you your claim. I mean, I suppose you could argue your detailed claim construction is what should have been adopted. The Board rejected that. I don't see any legal error with that. Some of these terms aren't even remotely in this claim language. Distributed mobile architecture is a much broader term than what you want it to be. Your Honor, we're not asking for reversal on this issue. We're asking for vacate and remand. So what do you want the claim construction to be? The claim construction should address the fact that the mobile architecture is distributed, which has not been done. The Board – Okay, so you don't get what you asked the Board for. What is your claim construction standing here today? That there has to be routing functionality that is distributed to the nodes. If you take a step back, and this is not the issue that we presented on appeal, but if you take a step back – What does that mean, and why does it matter? Why does distributed – I'm sorry. What is the claim construction you just proposed to me, what does it mean, and why does it matter? The term distributed mobile architecture appears 14 times in Claim 1. It has to – Right? You just proposed a claim construction that said something has to be distributed. And the Board found that the prior art reference had a distributed mobile architecture. Is there a lack of substantial evidence for the Board's finding on that? Does the prior art reference have no distributed mobile architecture? The prior art reference does not have a distributed mobile architecture. To find that a reference has a distributed mobile architecture, it is necessary to define what a distributed mobile architecture is. And the Board did not do that. They said – I know, but that's why I asked you to define it for me, and you just said something. Yes. Why is that not shown by Flores? What you just said. Okay, so what I – our proposed construction is that routing functionality has to be distributed. And Flores does not have distributed routing functionality. Flores is exactly the conventional architecture that this whole patent is distinguishing from. The term – I get it. The problem is you didn't write a specific claim that allowed communication between different devices on different servers. You wrote a very broad claim using distributed mobile architecture, which is a much broader term than what you tried to get it construed as. Your Honor, I'm trying to – I know, but you didn't write it in your claim. I'm trying to answer your question. The claim requires a distributed mobile architecture gateway. It requires a distributed mobile architecture server. It requires a distributed mobile architecture register. That has to mean something. The term appears – Every single one of these terms supports. Applying – without saying what distributed mobile architecture actually means, there cannot be a determination that it's anticipated. The term appears 800 times in the patent. It's in the title. It's in the abstract. It means something. Every example in the patent talks about a network architecture where the routing is done at the lower level, not at the top of a hierarchy. The PTAB completely ignored that. It can't just say – If it says we reject your construction, therefore we're doing plain and ordinary meeting, under 02micro, it has to say what that plain and ordinary meeting is because the parties disagreed about it. According to Microsoft, a distributed mobile architecture is an architecture that's distributed. And they said that just means the network is in more than one place. That's literally every network that has ever existed since the beginning of time. If you just replace distributed mobile architecture with any network, that's what Microsoft proposed. But the PTAB didn't even agree with Microsoft. They just said we don't need to decide what it means because we reject the construction proposed by Lenko. They had to give some construction.  Because it's a significant term that defines what the invention is. Without giving a definition to the term, they cannot have meaningfully assessed if what the patent claims was disclosed in the prior article. That's the fundamental concept of 02micro. How can – there's an infringement case going on. We have to show that Microsoft meets the claims. And for them to show anticipation, they have to show that the claimed concept was shown in the prior art. The parties disagreed over what a distributed mobile architecture is. The PTAB – the first thing the PTAB needed to do was say this is what it means. And then we could come to you and we could say we think the PTAB got it wrong. Can you talk a bit about communication information? I thought that's one of the terms. Yes. That issue you talked mostly about, distributed mobile architecture. Yes. So the plain language of the claim requires that the communications information identify the network that the target device can be contacted through. And that is a present tense requirement. Where in the claim language does it say it has to identify the network? It's the first step, which is the receiving step. So – and it helps if you have figure six of the patent in front of you. But if not, I'll paint a picture with words. We have – there's a first distributed mobile architecture gateway and there's a second distributed mobile architecture gateway. And the term is receiving at a first distributed mobile architecture gateway communications information for a communications network accessible by second DMA gateway. Can I interrupt you for a minute? Yes. I agree with you that the claim requires what you're saying. Okay. Right? That's great. Because it's said in the claim expressly. Yes. Right. Well, why would I interpret the claim language that's earlier in the claim to require this claim limitation? I don't really have to because it's right in the claim itself and the board compared the prior reference to that claim limitation. It made a fact finding that the prior taught that claim limitation. So I feel like with this issue in particular, you've – by arguing your claim construction, you're turning something that's a factual dispute into a claim construction dispute, which a claim to construction is legal, factual, you know, whether a prior reference teaches something is a fact question. And there's two different standards of review. Yes. So I feel like there's something tricky going on with your claim construction, to be honest with you. And I just want to be forthright and let you know that and see what your response is. Because it's kind of weird to say, well, there's like five limitations that talk about the communication information. Therefore, I'm going to read all of those limitations into this claim, when it's really not necessary because those limitations stand alone in the claim themselves. Well, thank you. So there's two points I'd like to address in your question. You know, the first is I agree with you that the plain language requires – and this was the part of the term I was about to get to – that the communications information indicates one or more devices accessible by the DMA server or the communications network. And the accessible is present tense. Now, the parties disagreed over that, and the PTAB found in favor of Microsoft, incorrectly, that there was no requirement of present tense. That when the communications information is received, it has to identify the network that the target device is accessible by. So, you know, in writing its decision, the PTAB applied the incorrect claim construction. So I think you're – What? Communication information or that other limitation? Well, communications information. The communications information is defined in the receiving step. And the claim is a little bit confusing because it uses communication – But why aren't you arguing about the meaning of the receiving step? Well, we are. You're arguing about the meaning of communication information. Correct. Communications information is defined in the receiving step. I mean, the first step of the claim is the DMAG receives the communications information. And then it says – this is the definition of communications information. It says the communications information indicates one or more devices – that's the target device – accessible by one of the DMA server or the legacy communications network. That is saying that when – the whole process begins with receiving the communications information. And what is the job of the communications information? It's to tell you the network you can use to find the target device. Now, this goes back to the whole point of the DMA architecture, which is you have – in Figure 6, you have two separate DMA networks. Within each DMA network, the individual nodes know how to route the calls. The problem that the 988 patent addresses is what happens when there's someone in the first network who wants to talk to someone in the second network. And the solution is you have the DMA gateway that sits above the DMA network and knows, through this collection of communications information, where to go to find the target device. So the whole claimed invention here is you have two DMA gateways. Each one is responsible for the DMA network that sits below it. And at the DMA gateway, you collect the communications information that says, if you're looking to talk to Bob, Bob is over in this other DMA network, and this is how you get to him. And that is a present tense term. And the board did not apply that claim construction, nor could it have, in finding that Flory anticipates. Have I answered your question? Okay.  So you pretty much run for your rebuttal time. Do you want to save the rest of it? I'll save the rest. Thank you. May it please the court. The board's decision below should be affirmed because the specific disputes that LEMCO is raising here are not really claim construction disputes. What LEMCO is doing is piecing together different statements scattered throughout the record, including statements that are about the prior art and statements comparing the claims to the prior art. Did you hear what he said today was the definition of distributed mobile architecture? I did, Your Honor. And I'll jump straight to that because I do want to address that. That is a different construction than they argued below, and it's a different construction than they argued in their briefs here. And this is emblematic of the approach that LEMCO took to claim construction. It was constantly changing positions. But what I heard him articulate here today was that routing functionality has to be distributed. And if that's the construction, the board expressly addressed that. This is at Appendix 10. We agree with Petitioner that patent owners call routing and peer-to-peer constructions are incorrect. Patent owner does not persuasively argue why the claim should be rewritten to require distributed call routing functionality. So if that's the scope of distributed that they're fighting over, the board expressly addressed that. Right, because it's not in the claims in that specific way. Correct. It uses a much broader term, distributed mobile architecture. That's exactly right. I mean, I know you just want to rely on plain and ordinary meaning, but if we have to rely on a construction of distributed mobile architecture, what is it? And you did have a definition of what the plain and ordinary meaning was. You said what that was, right? So there was a lot of discussion below about what the plain and ordinary meaning meant and how it applied to the claims. Ultimately, I think we agree with the board that it doesn't need a definition. And I think if you look at O2 Micro, O2 Micro says that courts do not have to define every single term. The obligation of a court under O2 Micro is to resolve the dispute as to claim scope. And the board clearly did that here. They expressly rejected the distributed call routing argument. They expressly rejected the hierarchical argument. That's at Appendix 18 and 19. And so the aspects of the claim scope that LEMCO is raising here were addressed. They were resolved. At page A9 at the bottom, the board says what it thinks your plain and ordinary meaning of distributed is. Are you saying that that is not correct? Sorry, which page are you talking about? It's on page A9 at the bottom. It says the petitioner describes the plain meaning of distributed as something that is part of a broader network or intended to be part of a broader network. Are you still maintaining that position? Or is that not an accurate depiction of your- No, we said that, and the board addressed that. What the board ultimately did is say that it didn't need to provide a specific definition of distributed, and it went on to- I'm just asking what your view of it is. Is this consistent with what your view of distributed is? Your Honor, so, yes, we said that below, and that is what distributed in the abstract means. There is substantially more discussion when you actually get into analyzing the floor reference as to how floor discloses these elements, and we provided a specific mapping to floor's figure of which elements were the distributed mobile architecture gateway, which ones were the distributed mobile architecture server. So the statement we made there, we said it below, we stand by it, but the analysis for how the floor reference actually anticipated the claims is substantially more detailed, and distributed is used to describe the distributed mobile architecture gateway, the distributed mobile architecture server, and so it's not just distributed alone that is dispositive of the dispute. It's the full analysis that the board did and that we did below showing how floor is components mapped to each of the claim terms, and that full analysis is what supports the board's findings under the substantial evidence standard, which is really the standard that applies to these disputes. Are you still arguing waiver of the issue with respect to construction on the communication information, or are you not arguing it? Yes, we are. So on communication information, ONCO on appeal is now advancing two requirements. One is a timing requirement that the device has to be accessible by the DMA gateway when the communication information is received, and then the second argument is that the communication information has to indicate the communications network itself in the communication information. Neither of those were presented as claim constructions or as questions of claim scope below. Didn't they, though, make it pretty clear what their position was? I don't think they did. If you look at Appendix 311 and 312, and this is where LEMCO points to in the record below in response to our waiver argument, if you look at the requirement to identify the communications network, I'll start with that one. The only place that's referenced anywhere on these pages is near the bottom of page 311. They said there is nothing in a PDP context that identifies any network accessible by a second gateway. And so PDP context is referring to the FLORA prior art. That's a statement about the FLORA prior art. And then if you continue to the next page, to the end of this section, where they tie this argument back to the claim language, the claim language they point to on Appendix 312 is that FLORA does not disclose receiving a communication at the first DMA gateway for a target device indicated by the communication information to be served by the second gateway. That is not the basis of the claim construction argument that they're making here. They claim here on appeal that the reason the communications information has to identify the network is because of the phrase for a communications network in the first limitation of the claim. That's not the limitation they were arguing. They were arguing the third limitation of the claim about identifying the target device. And so this is the problem with their argument, and this is why there's a waiver. They never presented this question as a question of flame scope. Instead, what they did is they described the FLORA prior art as part of making other arguments that FLORA did not disclose other elements of the claim. And that does not preserve a claim construction issue for appeal. And the argument with respect to the first part of their construction for communication information, that it be accessible at the time that the communication information is sent, it's exactly the same thing. If you look at Appendix 312, where they're making those statements, they're making them in the context of describing FLORA's prior art. One of the issues I'm having with your argument on waiver is that we have held that you can raise new arguments in support of a proposed claim construction. In other words, where they're finding support for their claim construction in the intrinsic evidence or extrinsic evidence, probably more intrinsic evidence can be further supported on appeal, but they can't propose a new claim construction. So I'm having a hard time where page A311 says what they think the challenge claims require communication that does something. I'm just letting you know. But you have a position even if we don't find waiver, right? I do. And I just want to make one comment. So on Appendix 311, where you say the challenge claims require. So they do have that. That's their very first paragraph on 311. And if you look at the four things that are listed there, it doesn't include either of the requirements they're advancing on appeal. There's nothing about timing and there's nothing about identifying the communications network itself. Now, to address your question, though, about our position. So with respect to whether the communications information has to identify the communications network, nothing in the claim language requires that. If you look at the claim language, all it says is that you receive communications information for a communications network. That doesn't mean that the name of the communications information has to be a part of the communications information itself. And, in fact, if you look at Figure 12 of the patent. So this is Appendix 73. And this is what LEMCO points to when they're identifying the support for communications information in the patent. All you see disclosed in Figure 12 are the names of DMA servers and DMA gateways. There's three DMA gateways, three DMA servers. Those are all identified. Those are identifying the devices serving the network, but they're not identifying the networks 620 and 640, which is what LEMCO claims are the DMA networks if you look back at Figure 6. There's no identification of any network there. And so we think that the plain claim language doesn't impose this additional requirement, and we think the specification is likewise consistent that there's no requirement to identify the communication network. Now, the second part of their construction is the timing. And if you look at the plain claim language, there is a sequence of steps, and LEMCO acknowledges in their reply brief that Claim 1 of the 988 patent imposes an order. And the actual communication that has to be routed by the second DMA gateway is the very last step. So in that step, the device has to be accessible by the DMA gateway. It does not have to be accessible at the time the communications information is received in the first step. And further support can be found if you look at the third limitation of Claim 1, which says receiving a communication at the first DMA gateway for a target device indicated by the communications information to be served by the second DMA gateway. So indicated is past tense. That's referring to when you received the communications information. But then the language describing the content says to be served. So when you received it, it was an indication that it is to be served in the future. And so the structure of the claims, the plain language of the claims, supports that the device only needs to be accessible when the call is received in the final step. And the other aspect that I'll point to in support is back to Figure 6 of the patent, which is Appendix 67. If you look at Figure 6, there's a dashed line 660. And this is describing a scenario, a handover scenario. One DMA server is moving from one DMA gateway to another. And this is exactly the sort of thing that the Flore prior reference is addressing. It's addressing handover from 3G to 4G networks. But it's the same concept. The patent acknowledges that servers will move between gateways. And it also acknowledges that individual devices will move between servers. That's what the HLR and the VLR, if you look back at Figure 12, that's what those are. Those are registers of which devices are at home and which devices are visitors, meaning they're roaming to a new DMA server. So the concept that devices are moving and that you have to be able to handle this handover from one DMA server to another or one DMA gateway to another is fully supported in the patent specification. And so LEMCO is basing this argument on the supposed purpose of the patent, that it only addresses finding devices right now at this moment. And that's just not true. The patent also addresses the fact that devices are moving in the network and you have to be able to have processes to hand over responsibility for a particular device from one server to another or from one gateway to another. Anything further? No, if there are no further questions. Thank you. I thought you used most of your rebuttal time, but I'll give you two minutes. Thank you, Your Honor. I appreciate that. The first point I'd like to make is that the timing requirement was fully disclosed below. At Appendix 31 and 32, the Board acknowledged the exact argument we're presenting for claim construction and rejected it. They said, Petitioner also contends the patent owner argues a nonexistent claim limitation that the identified device must be accessible by a DMA server at the time the communications information is received. So that's exactly how we're saying that the term should be construed now on appeal. And then I'll also cite our brief to the PTAB, Appendix 379, where we say that Petitioner has belatedly argued that the claims do not require that the identified device must be accessible by a DMA server at the time the communications information is received. Petitioner's new theory is directly contradicted by the plain language of the claim. So there was no waiver. That issue was fully presented. We're not presenting a new construction with respect to distributed mobile architecture either, and I'll refer the Court to Appendix 8 and 10 and 13 and 14, which clearly states that the routing functionality and the information needed to route has to be distributed to the lower level nodes in the architecture. Under O2 micro, it is not sufficient for the Board to say plain and ordinary meaning. It has to construe the term. It's obligated to resolve the dispute. It has to say what a distributed mobile architecture is. It means something. Only when that term is defined can it be determined if it's disclosed in a prior art reference. And my final point I'd like to refer to, my friend talked about this example at 1134 to 52 in the 988 patent, which is talking about the scenario where a distributed mobile architecture server is reassigned from one gateway to another gateway. That is not talking about tracking the location of a target device as it moves from network served by one gateway to another. It is not talking about using communications information to track where devices are located. There's not a single example anywhere in the patent that talks about prospective. You're way out of time. Thank you.